```
IN THE UNITED STATES DISTRICT COURT FOR THE
        EASTERN DISTRICT OF VIRGINIA

              Alexandria Division
```

| | | |
|---|---|---|
| MENGHUA WAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13cv1473 (JCC/TRJ) |
| | ) | |
| JEFFREY CRAWFORD, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## **M E M O R A N D U M   O P I N I O N**

Petitioner Menghua Wan[1] ("Petitioner") has filed the instant habeas action seeking release from federal immigration detention pursuant to 28 U.S.C. § 2241.  (Pet. [Dkt. 1] at 1.) Petitioner contends that his continued detention is unconstitutional as set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  (*Id.* at 4.)  As explained below, Petitioner's claim is without merit.  Accordingly, the Court will grant Respondents' Motion to Dismiss.  [Dkt. 4.]

### **I. Background**

The material facts are essentially undisputed. Petitioner is a citizen of the People's Republic of China ("PRC") who came to the United States in 1997 on a tourist visa. (Pet. at 2.)  Petitioner overstayed his visa, and on November

---

[1]  Petitioner's name is also written as Meng Hua Wan on some documents related to this case.  To avoid confusion, the Court will refer to Petitioner as Menghua Wan given that is how he is identified in the petition.

1

14, 2000, he was arrested by immigration services. (Mem. in Supp. of Mot. to Dismiss [Dkt. 5] Ex. A.)[2] Authorities released Petitioner on his own recognizance, but he failed to appear at a removal hearing held on March 20, 2001. (*Id.*) Petitioner avers that the notice for this hearing was sent to an incorrect zip code, although it is unclear from the record whether that was actually the case. (*Id.*) Apparently out of an abundance of caution, the Immigration Court set a new hearing for May 1, 2001, and ordered a new notice sent to Petitioner's alleged zip code. (*Id.*) Petitioner again failed to appear. (*Id.*) The Immigration Court ordered Petitioner removed to the PRC in absentia. (*Id.*) The removal order was served on Petitioner by regular mail. (*Id.*) Petitioner did not timely appeal this decision. (*Id.*)

Petitioner remained in the United States until June 20, 2012, when he was arrested after attempting to purchase a counterfeit Permanent Resident Card. (Mem. in Supp. of Mot. to Dismiss, Ex. C.) Petitioner later pled guilty to one count of conspiracy to commit immigration fraud in violation of 18 U.S.C. § 371, and one count of fraud and misuse of immigration

---

[2] Respondents have attached several exhibits to their motion to dismiss. The nature of these documents is such that this Court can properly consider them in the context of a motion to dismiss without converting the motion to one for summary judgment. *See Kostrzewa v. City of Troy,* 247 F.3d 633, 644 (6th Cir. 2001) ("A district court may consider public records in deciding a motion to dismiss without converting the motion to one for summary judgment.").

documents in violation of 18 U.S.C. § 1546. (*Id.*) This Court sentenced Petitioner to time served and a term of supervised release. (*Id.*) On December 12, 2012, immediately following his release from criminal custody, Petitioner was remanded to the custody of Immigration and Customs Enforcement ("ICE"). (Mem. in Supp. of Mot. to Dismiss, Ex. D.)

On January 11, 2013, Petitioner moved the Immigration Court to reopen his prior proceedings. (Mem. in Supp. of Mot. to Dismiss, Ex. A.) Petitioner claimed, among other things, that his failure to appear was the result of ineffective assistance of counsel, and he would be subject to torture if removed to the PRC. (*Id.*) Petitioner also requested relief on the grounds of persistent family medical issues involving his son. (*Id.*) The Immigration Court denied Petitioner's motion on timeliness grounds, and also declined to reopen *sua sponte*. (*Id.*) The court concluded that Petitioner was well outside the ninety-day statutory period, and he had failed to follow up on his prior immigration proceedings despite sufficient notice. (*Id.*) The court further found that Petitioner had not established a viable claim that his failure to appear was the result of ineffective advice from counsel. (*Id.*) While the court noted that Petitioner presented "significant equities" with respect to his son's health conditions, they did not outweigh the deficiencies in his motion to reopen. (*Id.*)

3

Petitioner noticed an appeal to the Board of Immigration Appeals ("BIA") on February 28, 2013. (Mem. in Supp. of Mot. to Dismiss, Ex. E.) The BIA affirmed the Immigration Court's conclusion that Petitioner's motion was untimely, not subject to any regulatory exception, and Petitioner had not pursued his claims with due diligence. (*Id.*)

Petitioner subsequently filed a petition for review in the First Circuit. In June 2013, during the pendency of Petitioner's case in the First Circuit, ICE secured travel documents from the PRC. (Mem. in Supp. of Mot. to Dismiss, Ex. F.) Federal authorities then arranged transportation for Petitioner to the PRC, with his departure scheduled for July 31, 2013. On July 17, 2013, however, the First Circuit ordered that Petitioner's removal be stayed pending further review of his case. (Mem. in Supp. of Mot. to Dismiss, Ex. H.) On October 22, 2013, the First Circuit remanded Petitioner's case to the BIA to consider whether his request to reopen his original immigration proceeding "qualifies for an exception to the filing deadline for motions to reopen and if so, whether [Petitioner] is eligible for relief or protection based on his submissions." (Mem. in Supp. of Mot. to Dismiss, Ex. I.)

On November 27, 2013, Petitioner filed the instant *pro se* habeas petition, alleging that his continued detention violates the Constitution. (Pet. at 1.) According to

4

Petitioner, "[b]ecause there is no significant likelihood of removal in the reasonably foreseeable future, and because none of the special circumstances exist here to justify [his] continued detention, [he] must be released under ICE supervision." (*Id.* at 3.) Petitioner asks the Court to order his immediate release. (*Id.* at 3-4.) Respondents have moved to dismiss this action, claiming that Petitioner's continued detention is permissible given his removal is reasonably foreseeable. (Mem. in Supp. of Mot. to Dismiss at 7.)

Both parties have filed pleadings and responsive materials in accordance with the Federal Rules of Civil Procedure and *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975). Accordingly this matter is ripe for review. For the reasons sated below, the petition will be dismissed.

## II. Analysis

Under 8 U.S.C. § 1231(a), once an alien is ordered removed, the Attorney General has a ninety-day period or "the removal period" within which to remove the alien. Continued detention during this ninety-day period is not only appropriate under the statute, it is required. *See* 8 U.S.C. § 1231(a)(2). The removal period begins to run on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the

>     removal of the alien, the date of the
>     court's final order.
>
>     (iii) If the alien is detained or confined
>     (except under an immigration process), the
>     date the alien is released from detention or
>     confinement.

8 U.S.C. § 1231(a)(1)(B).

According to the pleadings, the U.S. Marshals released Petitioner to ICE custody on December 12, 2012, following his criminal confinement for immigration fraud. (Mem. in Supp. of Mot. to Dismiss, Ex. D.) Thus, pursuant to 8 U.S.C. § 1231(a)(1)(B)(iii), Petitioner's ninety-day removal period commenced on December 12, 2012.[3]

The statute, however, also provides that aliens may be detained beyond the ninety-day removal period. *See* 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Supreme Court interpreted this post-removal provision of § 1231 to include a presumptively reasonable detention period of six months. 533 U.S. at 701. In reaching this result, the Supreme Court explained that the six-month presumption did not mean that every alien must automatically be placed on supervised release at the end of six months; rather, the Court made clear that confinement may

---

[3] The First Circuit's decision to stay Petitioner's removal and have his case remanded to the BIA does not alter the start date for Petitioner's removal period because the First Circuit, and now the BIA, is not reviewing the substance of the removal order, but rather is reviewing Petitioner's motion to reopen proceedings. *See Diouf v. Mukasey*, 542 F.3d 1222, 1230 (9th Cir. 2008) (holding that a stay of removal entered while a court reviews the BIA's denial of a motion to reopen proceedings does not prevent the removal period from beginning).

continue beyond this period until "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, under *Zadvydas,* an alien detained while awaiting removal cannot obtain habeas relief from continued confinement unless he meets a two prong standard. The alien must show (i) that he is being held beyond the presumptively reasonable six-month period, and (ii) that there is no significant likelihood of removal in the foreseeable future. *See Phillippe v. Willett*, No. 1:08cv1167 (JCC), 2009 WL 416053, at *4 (E.D. Va. Feb. 18, 2009). If the alien makes these *prima facie* showings, the burden shifts to the government to provide evidence in rebuttal. *See Zadvydas,* 533 U.S. at 701.

Because the alien bears the initial burden, ICE can continue to detain a deportee "*until* it has been shown that there is no significant likelihood of removal within the reasonably foreseeable future." *Bonitto v. B.I.C.E.,* 547 F. Supp. 2d 747, 754 (S.D. Tex. 2008) (emphasis in original). The *Zadvydas* Court posited a sliding scale for what "reasonably foreseeable future" means: the longer the post-removal order confinement, the more stringent a court should be in determining what constitutes the "reasonably foreseeable future." *Zadvydas,* 533 U.S. at 701; *see also Seretse-Khama v. Ashcroft,* 215 F. Supp. 2d 37, 48 (D.D.C. 2002) (finding that, for a deportee detained for more than three years, "reasonably foreseeable

future" meant the point at which removal would be "truly imminent").

In this case, it is undisputed that Petitioner has been confined beyond the presumptively reasonable detention period of six months. The question before the Court, then, is whether Petitioner has made a showing "that there is no significant likelihood of removal in the reasonably foreseeable future," and, if so, whether the Government has sufficiently rebutted that showing. *Zadvydas*, 533 U.S. at 701.

Although Petitioner has satisfied the first prong of the standard, he falls far short with respect to the second. He has proffered no good reason to believe his claim that there is no likelihood of removal in the foreseeable future.

Petitioner was held for less than six months prior to ICE arranging for his removal. Any delays in his departure – and, as such, any continuation of his detention – were caused by Petitioner's request for a stay from the First Circuit. The Second Circuit addressed a similar factual scenario in *Obikanye v. I.N.S.*, 78 F. App'x 769, 772 (2nd Cir. 2003). There, the court held:

> [Petitioner] has not shown that the INS will
> be unable to remove him within a reasonable
> time after the resolution of his petition
> for review. Moreover, [petitioner] is not
> being held indefinitely beyond the removal
> period, but instead, only because he
> requested and was granted a stay of removal.

> Because [petitioner's] removal is reasonably foreseeable, his detention does not implicate *Zadvydas*; he will be subject to removal if this Court denies his pending petition for review, and, if he prevails on the petition for review and is granted asylum, he will be released. Accordingly, the district court properly denied his § 2241 petition.

*Id.* The Second Circuit's rationale is equally applicable here. *See also Marcelus v. I.N.S.,* No. CIV.A. 01-2587, 2002 WL 80301, at *1 (E.D. Pa. Jan. 16, 2002) ("Petitioner cannot secure release from detention which has been prolonged beyond the ninety-day removal period or presumptively reasonable six month period because of a judicial stay entered at his request to block his removal[.]").

Courts have held that removal was "reasonably foreseeable" when, for example, ICE was taking active steps to secure removal at some point in the future, which included seeking diplomatic assistance from the State Department, *see Ali v. Barlow,* 446 F. Supp. 2d 604, 611 (E.D. Va. 2006), or when a nation had indicated that it would accept an alien, even though it was uncertain about when deportation could take place because of political unrest, *see Nima v. Ridge,* 286 F. Supp. 2d 469, 474-75 (E.D. Pa. 2003). Removal in this case is far more foreseeable than it was in either of the cases cited above. Petitioner was slated for removal in July, and although the travel documents have since expired, there is no uncertainty

9

about Petitioner's nationality or whether the PRC will accept him if deportation proceedings resume. It is reasonable to presume that the PRC will issue renewed documents when the First Circuit's stay ordered is lifted, provided Petitioner remains removable.

Courts have found that removal was not "reasonably foreseeable" in situations where no country would accept the detainee, the country of origin refused to issue proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time. *See Nima,* 286 F. Supp. 2d at 475. None of these circumstances are analogous to the facts presented here.

In sum, the Court finds that Petitioner has failed to show that removal is not "reasonably foreseeable," and moreover, any delay has been the result of Petitioner's own conduct. As such, this habeas action cannot proceed on the grounds alleged.[4]

---

[4] Petitioner also appears to request the Court to order that he is eligible for asylum (or not subject to removal) pursuant to the Convention Against Torture and his son's medical condition. (*See* Pet. at 3-4; Pet'r's Resp. [Dkt. 7] at 6, 10.) The Court lacks jurisdiction to consider such claims. *See* 8 U.S.C. § 1252; *Baguma v. B.I.C.E.*, No. Civ.A. 1:03–CV–239–C, 2004 WL 1454459, at *1-2 (N.D. Tex. June 22, 2004); *see also Marquez-Coromina v. Hollingsworth*, 692 F. Supp. 2d 565, 568-69 (D. Md. 2010); *Atem v. Ashcroft*, 312 F. Supp. 2d 792, 797 (E.D. Va. 2004). Accordingly, to the extent Petitioner is requesting such additional relief, his petition must be denied.

### III. Conclusion

For the foregoing reasons, the Court will grant Respondents' Motion to Dismiss.  An appropriate order will issue.

|  |  |
|---|---|
|  | /s/ |
| March 12, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |